1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT FOR THE
8                EASTERN DISTRICT OF CALIFORNIA
9
10  JAMES RASBERRY,                         1:08-cv-01767 AWI GSA PC
                                    )
11                  Plaintiff,      )        FINDINGS AND
                                    )        RECOMMENDATION RE
12           v.                     )        DEFENDANTS' MOTION FOR
                                    )        SUMMARY JUDGMENT
13  A. TREVINO, M.D., et al.,       )
                                    )        (ECF No. 50)
14                  Defendants.     )
                                    )        OBJECTIONS DUE IN THIRTY
15  _____   )        DAYS
16
17
18          Plaintiff is a state prisoner proceeding pro se in this civil rights action.  This proceeding
19  was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).   Pending before
20  the Court is Defendants' motion for summary judgment.  Plaintiff has opposed the motion.[1]
21  **I.   Procedural History**
22          This action proceeds on the March 2, 2010, first amended complaint.  Plaintiff, an inmate
23  in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP
24  Corcoran, brings this civil rights action against Defendants A. Trevino and L. Miguel,
25  correctional officers employed by the CDCR.  The events that give rise to this lawsuit occurred
26
27  _____
28          [1]On April 3, 2009, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v.
    Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 10.)

while Plaintiff was housed at CSP Corcoran.   Plaintiff claims that Defendants subjected him to excessive force in violation of the Eight Amendment's prohibition on cruel and unusual punishment, and have subjected him to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Defendants have filed a motion for summary judgment on the ground that there does not exist a triable issue of disputed fact.  Plaintiff has opposed the motion.

## II.    Allegations

The event that gives rise to this lawsuit occurred on June 9, 2008, at Corcoran State Prison, where Plaintiff was housed.  During the evening dayroom program, Plaintiff and another inmate were engaged in a fist fight.  Defendant Trevino, the floor officer, ordered both inmates to lay down on the ground.  Plaintiff "attempted to fend off the onslaught of blows."  C/O Trevino then sprayed both inmates with pepper spray.  The inmates did not comply, and Trevino ordered the section control officer, Defendant Miguel, to fire the 40mm baton launcher.  C/O Miguel fired a round, which missed both inmates.  Plaintiff, upon hearing the firing of the launcher, went prone.  The other inmate failed to go prone, and Miguel fired a second round, which struck Plaintiff in the back of the head. (Am. Compl. p. 4.)   Plaintiff alleges that Defendants used excessive force, and their use of force was motivated by Plaintiff's ethnicity.

## III.   Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

1    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

2        If the moving party meets its initial responsibility, the burden then shifts to the opposing

3    party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

4    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

5    existence of this factual dispute, the opposing party may not rely upon the denials of its

6    pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

7    admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

8    Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

9    contention is material, i.e., a fact that might affect the outcome of the suit under the governing

10   law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.

11   1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12   return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v.

13   Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

14       In the endeavor to establish the existence of a factual dispute, the opposing party need not

15   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

16   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

17   trial."  Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the

18   "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

19   whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

20   56(e) advisory committee's note on 1963 amendments).

21       In resolving the summary judgment motion, the court examines the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23   any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

24   255, and all reasonable inferences that may be drawn from the facts placed before the court must

25   be drawn in favor of the opposing party,  Matsushita, 475 U.S. at 587 (citing United States v.

26   Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn

27

28                                          3

out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

A.    **Excessive Force**

Where prison officials are accused of using excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992)(quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).   Factors to consider in evaluating a claim of excessive force in the prison context are: (1) the extent of the injury suffered by an inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used: (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7; Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The infliction of pain in the course of a prison security measure "does not amount to a cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary."  Id. at 319.  Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

In order to meet their burden on summary judgment, Defendants must come forward with evidence that establishes, without dispute, that force was applied in a good-faith effort to

maintain or restore discipline, and not maliciously or sadistically to cause harm.   Defendants

argue that they reasonably perceived Plaintiff and Tatum (the other combatant) as a threat, and

that they used the minimal amount of force necessary to stop the combatants.  Defendants

support their motion with their declarations, along with the crime incident report of the incident

at issue, and relevant pages from Defendants' first set of admission requests to Plaintiff, and

Plaintiff's responses to those requests.

　　　Defendant Trevino, the housing officer, declares that, on the date of the incident:

>At approximately 8:06 p.m., while monitoring the dayroom
>activities in the housing unit, I saw inmates Rasberry (V-61336)
>and Tatum (C-26054) fighting in the A section of the dayroom.
>They were striking each other with closed fists in the facial and
>torso areas.
>
>I yelled for the inmates to get down, and all the inmates in the
>dayroom area complied with my order except Rasberry and Tatum,
>who continued fighting.
>
>As I responded to the area where Rasberry and Tatum were
>fighting, I pulled out my pepper spray and repeated my order to get
>down.  They did not comply.
>
>Officer Muniz, the other housing officer, activated the alarm and
>responded to the scene.
>
>Despite repeated orders from Muniz and me to get down, Rasberry
>and Tatum continued to strike each other.
>
>I sprayed both inmates in the facial area with pepper spray.  I also
>heard Muniz use his pepper spray.  The pepper spray had no effect
>on Rasberry and Tatum, and they continued fighting.
>
>I sprayed Rasberry and Tatum again to no avail.
>
>I then heard a 40 mm impact shot, but I did not see where or who it
>struck.
>
>Rasberry responded to the impact shot and proned out on the floor.
>Tatum did not.  Instead, he bent over with his hands on his knees
>and looked in Rasberry's direction.
>
>I heard a second shot.  Tatum responded and proned out on the
>floor.
>
>I did not see where the second shot hit.

1    Responding staff arrived, and I placed Tatum in handcuffs.

2    Muniz and I escorted Tatum to the front of the building for medical
     evaluation.  We then escorted him to the B-section shower for
3    decontamination.

4    I did not assist in handcuffing or decontaminating Rasberry, and I
     had no further interaction with him after I handcuffed Tatum.
5
     I did not order or tell Officer Miguel, the control booth officer, to
6    shoot Raspberry.  I did not see Miguel retrieve the launcher or
     shoot it.   I only heard the shots.
7
     I pepper sprayed Rasberry and Tatum because they were striking
8    each other with closed fists in the facial and torso areas and
     because they failed to comply with my repeated orders to stop
9    fighting and get down.

10   I perceived Rasberry's and Tatum's fighting as a threat not only to
     each other but to all the inmates and staff in Building 2.
11
     At the time they started fighting, there were approximately thirty to
12   forty inmates in the dayroom area.  Rasberry's and Tatum's
     disruptive behavior could have incited the other inmates to fight
13   among themselves or attack staff.  I needed to put an immediate
     end to their fighting and gain control of the situation, Rasberry, and
14   Tatum.  I determined the safest means to do so was to pepper spray
     them.
15
     I did not use pepper spray on Rasberry because he is Black.  I
16   sprayed him because he posed a significant threat to me and
     everyone in the building.
17
     I did not use, and I did not see any officer use, any more force than
18   necessary to stop Rasberry from fighting and to compel his
     compliance with my orders.
19

20   (Trevino Decl.; ¶ ¶ 3-22.)

21        Officer Miguel, the control booth officer, declares that:

22        As a control booth officer, I supervise the entire housing unit from
          the centralized, second-level booth.  Because weapons, including
23        the 40mm impact launcher, are stored in the control booth, a
          control booth officer cannot leave the booth until the end of the
24        shift or if relieved by another officer.  A control booth officer
          responds to incidents using the equipment or weapons available in
25        the control booth as necessary.

26        The 40 mm launcher shoots large rubber bullets.

27

28                                          6

At approximately 8:06 p.m., I noticed inmates Rasberry (V-61336) and Tatum (C-26054) fighting in the A section of the dayroom. Tatum appeared to be striking Rasberry very hard in the head and facial area.

I retrieved the 40 mm launcher off the rack and heard the housing officers, Trevino and Muniz, yell "get down" several times.

After I retrieved the launcher, I ran to the A section of the control booth.

I saw Trevino and Muniz pepper spray Rasberry and Tatum who were still fighting. They continued to fight despite being pepper sprayed.

I yelled for Rasberry and Tatum to get down, but they did not comply with my order.

Rasberry had his back towards me. I aimed the launcher at his buttocks and shot.

The shot had the desired effect because Rasberry got down on the ground. But I did not see where the rubber bullet struck.

Tatum did not get down at the sound of the shot. Instead, he bent at the waist and appeared to be standing over Rasberry. He was facing the dayroom.

I reloaded the launcher (which only took a matter of seconds), aimed at Tatum's right thigh, and shot a second round.

Tatum responded to the second shot and proned out. I did not see where the round struck.

I then opened the sally port gate for responding staff.

Both inmates were handcuffed and escorted out of the building.

Trevino did not order or tell me to shoot Rasberry or Tatum.

I shot the launcher because I believed it was necessary to stop Rasberry's and Tatum's disruptive and violent behavior. The pepper spray had no effect on them, and they continued to fight despite repeated orders to stop.

I perceived Rasberry's and Tatum's fighting as a threat not only to each other but to all the inmates and staff in Building 2.

At the time they started fighting, there were approximately thirty to forty inmates in the dayroom area. Rasberry's and Tatum's disruptive behavior could have incited the other inmates to fight among themselves or attack staff. I needed to put an immediate

7

end to their fighting and gain control of the situations and the inmates. I determined that the most efficient and safest manner to do so was by shooting at their lower extremities after the use of pepper spray proved ineffective.

I was unaware that Rasberry had been hit in the head by a round from the 40mm launcher.

I did not aim the launcher at Rasberry's head, and I did not intend to shoot him in the head.

I saw Rasberry's use-of-force interview with Lieutenant Pearson, conducted the next morning on June 10, 2008. Rasberry stated he was hit in the head with a bullet that ricocheted. He also stated that I had not shot him on purpose.

I did not use, and I did not see any officer use, any more force than was necessary to stop Rasberry from fighting and to compel his compliance with orders to get down.

(Miguel Decl.; ¶ ¶ 3-24.)

Considering the five factors set forth in Whitley, the Court finds that Defendants have come forward with evidence that establishes the lack of existence of a triable issue of fact regarding whether force was used maliciously or sadistically. Defendants argue that the force used on Plaintiff was applied in a good faith effort to maintain or restore discipline.

Factor (1). The extent of injury suffered by Plaintiff. Plaintiff's first amended complaint, made under the penalty of perjury, establishes that the rubber bullet caused bleeding and temporary unconsciousness.[2] Plaintiff also suffered from blurred vision, periodic dizziness, and, at the time the first amended complaint was filed, psychiatric treatment as a result of "mental trauma." The Whitley court specifically held that the extent of physical injury is not the controlling factor in determining whether an Eighth Amendment violation occurred. Hudson instructs that "[In determining whether the use of force was wanton and unnecessary it may also

---

[2] Plaintiff's first amended complaint is made under the penalty of perjury. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McCauley v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curia); Lew v. Kana Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(c)(4).

8

be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by responsible officials," and "any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 8. It is undisputed that Plaintiff was shot in the head by Officer Miguel with a rubber bullet and suffered injury. The law is clear, however, that injury is but one factor to consider.

Factor (2). The need for application of force. Defendants' declarations have established that they were responding to two inmates engaged in mutual combat. (Trevino Decl. ¶ 19; Miguel Decl. ¶ 18.) Plaintiff's evidence, in the form of his amended complaint, does not dispute this. As Plaintiff puts it, he "became embroiled in an argument with another inmate that led to a fistfight." (Am. Compl. p. 3.) Defendant Trevino's declaration establishes that he ordered all of the inmates to get down, and all of the inmates complied, with the exception of Plaintiff and inmate Tatum. Defendant's evidence establishes that there was an altercation, and Plaintiff refused a verbal order to get down. Defendant's evidence therefore establishes the need for the application of force. Plaintiff's opposition is not made under the penalty of perjury, and the only exhibit attached to the opposition is a copy of Defendant Trevino's declaration. The Court finds that Defendants' evidence establishes, without dispute, that there was a need for the application of force. Plaintiff has failed to come forward with evidence to the contrary.

Factor (3). The relationship between the need for application of force and the amount of force used. Trevino's declaration establishes that an attempt was made to stop the fight with a verbal order, and that the inmates failed to comply. Trevino and another C/O then attempted to stop the fight with pepper spray, spraying both inmates in the face with pepper spray. The pepper spray had no effect on either inmate, and they continued fighting. (Trevino Decl., ¶¶ 4, 8.) Plaintiff's first amended complaint, taken as a declaration, establishes that the use of pepper spray "did not deter the aggressing [sic] inmate from throwing punches. " Plaintiff does not, however, establish that he complied with the order to get down until after he heard the sound of the first 40 mm round. Defendants' evidence establishes, without dispute, that neither inmate

1  complied with orders to get down, despite being pepper sprayed.  The evidence therefore
2  establishes, without dispute, that the use of the 40 mm launcher was taken in a good faith effort
3  to maintain order.

4       Factor (4).  The theat reasonably perceived by Trevino and Miguel.  Both Defendants
5  have declared that at the time Plaintiff and Tatum started fighting, there were approximately
6  thirty to forty inmates in the dayroom area, and that the disruptive behavior could have incited
7  the other inmates to fight among themselves or attack staff.  Their declarations establish the need
8  to put an immediate end to the fighting and gain control of the situation.  (Trevino Decl. ¶ 20;
9  Miguel Decl. ¶ 20.)  Plaintiff offers no evidence to the contrary.

10       Factor (5).  Any efforts made by Trevino and Miguel to temper the severity of a forceful
11  response.   As noted, the evidence establishes that verbal commands and pepper spray were
12  ineffective in stopping the fight.  Miguel declares that he shot the launcher because he believed it
13  was necessary to stop the disruptive and violent behavior.  Officer Miguel specifically declares
14  that the pepper spray "had no effect on them, and they continued to fight despite repeated orders
15  to stop." (Miguel Decl. ¶ 18.)   As noted, Plaintiff's declaration does not dispute that he did not
16  drop to the ground until he heard the first round fired from the 40 mm launcher.  Defendants'
17  evidence establishes, without dispute, that lesser means of force were attempted before resorting
18  to the 40 mm launcher.  Plaintiff's own evidence establishes this.

19       Plaintiff's grievance seems to be that once he went down, another shot was fired, hitting
20  him in the head.  These two facts alone, taken without consideration of any other facts, would
21  suggest a possibility that he was shot intentionally.  However, considering all the <u>Hudson</u> factors,
22  as we must, and considering all the evidence submitted by Defendants, the Court finds that the
23  force used on Plaintiff was taken in a good faith effort to restore order and maintain discipline.
24  Although Plaintiff does come forward with evidence, in the form of a declaration, that he went
25  prone and then was shot in the head, Defendants' evidence establishes that the other inmate did
26  not go down after the first shot.  Officer Miguel declared that instead of going down after the first

27

28                             10

shot, Tatum bent at the waist and "appeared to be standing over Rasberry." (Miguel Decl. ¶ 12.)
Miguel reloaded the launcher, which only took a matter of seconds, aimed at Tatum's right thigh,
and shot a second round, which had the desired effect.  (Id. ¶ 13.)  Plaintiff offers no evidence to
the contrary.

    Although it is undisputed that Officer Miguel shot a second round after Plaintiff went
down, Defendants' evidence establishes that a second shot was necessary in order to force inmate
Tatum to comply with previous orders to get down.  It only took a few seconds to fire a second
round.  There is no evidence from which an inference could be drawn that Officer Miguel
intentionally shot Plaintiff.  Hudson directs that prison officials confronted with a prison
disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and
visitors against the harm inmates may suffer if guards use force.  Despite the weight of these
competing concerns, corrections officials must make their decisions "in haste, under pressure,
and frequently without the luxury of a second chance." Hudson, 503 U.S. at 7, quoting Whitley,
475 U.S. at 320.

    The Court finds that Defendants have come forward with evidence that establishes the
lack of existence of a triable issue of fact.  Defendants' evidence establishes that the force used
against Plaintiff was necessary in order to stop Plaintiff and inmate Tatum from fighting and was
only taken after lesser measures proved unsuccessful.   Defendants have come forward with
evidence that establishes that they perceived a threat to inmates and staff.  Plaintiff has failed to
come forward with evidence to the contrary.  Although Plaintiff suffered injury as a result of
Defendants' actions, a claim of excessive force under the Eighth Amendment is concerned with
the amount of force used, not the nature or severity of the injury inflicted.  Hudson, 503 U.S. at
8-10; Oliver v, Keller, 289 F.3d 623, 628 (9th Cir. 2002).   Defendants are therefor entitled to
summary judgment on Plaintiff's claim of excessive force.

    B.    **Equal Protection**

    The Equal Protection Clause requires that persons who are similarly situated be treated

11

1    alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal

2    protection claim may be established in two ways.   First, a plaintiff establishes an equal

3    protection claim by showing that the defendant has intentionally discriminated on the basis of the

4    plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668,

5    686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the

6    defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.

7    Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).   To establish a violation of

8    the Equal Protection Clause, Plaintiff must present evidence of discriminatory intent.

9    Washington v. Davis, 426 U.S. 229, 239-40 (1976); Serrano v. Francis, 345 F.3d 1071, 1081-82

10   (9th Cir. 2003); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).

11           Plaintiff, who is African American, alleges that Defendant Trevino, who is Hispanic, shot

12   him because of his ethnicity.  The event at issue in this lawsuit occurred in June of 2008.

13   Plaintiff's first amended complaint, taken as a declaration, indicates that Defendant Trevino was

14   the first responder to a disturbance involving "no less than five" Hispanic inmates on August of

15   2008.  Plaintiff alleges that Trevino did not use pepper spray, and that the "melee" lasted over

16   five minutes and was "much graver" than the fight involving Plaintiff.  Plaintiff also alleges that

17   Trevino was suspended from Duty for handcuffing and beating an African American inmate in

18   August of 2009.

19           Defendant Trevino declares that:

20           I did not use pepper spray on Rasberry because he is black.  I
             sprayed him because he posed a significant threat to me and
21           everyone in the building.

22           I did not use, and I did not see any officer use, any more force than
             was necessary to stop Rasberry from fighting and to compel his
23           compliance with my orders.

24           I have never been disciplined or reprimanded for using unnecessary
             or excessive force on an inmate.  Nor have I used excessive or
25           unreasonable force on any inmate.

26           I have never been disciplined or reprimanded for discriminating
             against Black inmates or for treating Black inmates differently than
27

28                                                    12

1
2

non-Black inmates.  I have never discriminated against Black
inmates, nor have I treated them differently than non-Black
inmates.

3
4

(Trevino Decl. ¶ 21-24.)

5

Defendant Trevino has come forward with evidence that he did not use force on Plaintiff

6

because he is African American.  Defendant's declaration establishes that he did not order

7

Officer Miguel to file the 40 mm launcher.  Although Plaintiff declares that he did order Miguel

8

to fire, this claim does not turn on that fact.  Miguel declares that he fired the 40 mm launcher in

9

order to get Plaintiff and inmate Tatum to comply with prior orders to get down.  As noted, it is

10

undisputed that verbal orders and pepper spray were ineffective in gaining compliance.

11

Although Plaintiff states in his verified amended complaint that Trevino was suspended

12

from duty for beating and handcuffing an African American inmate, he does not come forward

13

with any facts that would be admissible in evidence to support his statement.  "A verified

14

complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based

15

on personal knowledge' and 'sets forth specific facts admissible in evidence." Keenan v. Hall,

16

83 F.3d 1083, 1090 n. 1 (9th Cir. 1996)(quoting McCauley v. Babbitt, 833 F.2d 196, 197-98 & n.

17

1 (9th Cir. 1987)(per curiam), amended by 135 F.3d 1318 (9th Cir. 1998)(order); see also Jones v.

18

Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir.

19

2000)(en banc).

20

Here, we have Officer Trevino's declaration, based on his personal knowledge, that he

21

reasonably perceived a threat to Plaintiff and other inmates, and acted in response to that threat.

22

Officer Trevino declares that he has never been disciplined for racial discrimination.  Plaintiff

23

offers no competent evidence to the contrary.  Plaintiff's evidence establishes, at most, that

24

Officer Trevino was involved in a use of force incident with other inmates.  Whether that use of

25

force was sadistic and malicious, or was used in a good faith effort to restore order and maintain

26

discipline, is not before the Court on this motion.  Plaintiff's evidence establishes, at most, that

27

Officer Trevino was involved an a different incident of force in August of 2008.  That the

28

13

1   inmates involved were Hispanic and the incident "much graver" than the incident at issue in this

2   case does not establish evidence that Trevino acted with the intent to discriminate against

3   Plaintiff on the date at issue in this lawsuit.

4   **IV.    Conclusion and Recommendation**

5          Defendants have come forward with evidence that establishes, without dispute, that

6   Plaintiff was involved an a physical altercation with another inmate, that they refused orders to

7   get down, and continued to refuse to get down after being pepper sprayed.  Defendants' evidence

8   establishes that two 40 mm rounds from a baton launcher were necessary in order to gain

9   compliance, and that Defendants acted in response to a theat to inmates and staff, and not on the

10  basis of Plaintiff's race.  Plaintiff offers no evidence to the contrary.

11         Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary

12  judgment be granted, and judgment be entered in favor of Defendants and against Plaintiff.

13         These findings and recommendations are submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  shall be served and filed within ten days after service of the objections.   The parties are advised

19  that failure to file objections within the specified time waives all objections to the judge's

20  findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file

21  objections within the specified time may waive the right to appeal the District Court's order.

22  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24

25

26

27

28                                                          14

IT IS SO ORDERED.

**Dated:** _____**July 5, 2012**_____          _____/s/ **Gary S. Austin**_____
                                            UNITED STATES MAGISTRATE JUDGE